[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15879
_____

D.C. Docket  No. 1:10-cr-00370-CAP-GGB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEOFFREY A. GISH,

Defendant-Appellant.


_____

No. 11-15880
_____

D.C. Docket  No. 1:10-cr-00370-CAP-GGB-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MYRA J. ETTENBOROUGH,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(May 16, 2013)

Before MARTIN, HILL, and BARKSDALE,* Circuit Judges.

PER CURIAM:

Geoffrey A. Gish and Myra J. Ettenborough appeal their convictions on various counts of mail and wire fraud and conspiracy to commit these frauds. In addition, Gish appeals his sentence. For the following reasons, we shall affirm their convictions and Gish's sentence.

I.

Between 2004 and May of 2006, the purported investment firm of Weston Rutledge raised approximately $30 million from over 300 investors for primarily three investment programs.[1] Geoffrey A. Gish was the head of Weston Rutledge. Myra Ettenborough was Gish's office and operations manager, with responsibility for managing almost all aspects of the company's business, employees, and interactions with its investors. Ettenborough handled all mail, managed and

_____

*Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

[1] These firms were named Zamindari Capital, Lexington International Fund, and Oxford Adams Fund.

2

reconciled Weston Rutledge's numerous bank accounts, handled all banking transactions, checks and wires, and processed all payments to investors. Gish and Ettenborough communicated to investors how the programs worked, details of the investments' safety and security, the investments' performance and earnings and other information. They also provided all other employees with the information provided to investors.

Ettenborough also wrote a newsletter that was distributed to investors. In one newsletter, she described how investors' principal would reside at a major bank in a non-interest bearing account with a block on it, which no one could touch during the investment period. The newsletter also purported to report investment results. Ettenborough provided standard document packages to investors showing substantial rates of return and created and distributed account statements to investors showing positive monthly earnings and increasing total account balances said to be from earnings. In March 2006, the last full month for which there were statements, the account balances as shown on investor statements reached $34 million.

In reality, virtually none of the representations made to investors was true. Of the $30 million raised by Gish, approximately $12 million was returned to investors to satisfy earnings and principal withdrawal demands. The rest went to

3

Gish, Ettenborough, other third parties and various non-investment purposes.[2]

Ettenborough signed most of these checks. None of the investment funds went to any trading activity of any kind.

Of course, the cash on hand at Weston Rutledge steadily declined over time. Upside down from the beginning, the gap between investor statements and cash on hand grew to almost $34 million by March 2006.

Various investigations of Weston Rutledge took place, beginning in late 2004 when the Georgia Secretary of State securities division subpoenaed Gish and Weston Rutledge. This investigation resulted in a cease and desist order and a civil fine. Instead of ceasing operations, Gish moved Weston Rutledge to a new office and resumed soliciting investors. Other investigations took place in both Arizona and Texas.

During this time, Gish and Ettenborough consulted a securities lawyer about their securities investment program Zamandari. They did not tell this lawyer about the Georgia investigation. Subsequently, the lawyer withdrew his representation of Zamandari, informing him that his investment program was in violation of numerous securities laws and had the "indicia" of fraud. Gish did not further

---

[2] Investor funds totaling over $700,000 went to Gish's personal account. The funds also paid for credit cards, spas, cars and related expenses. Other funds paid Ettenborough's salary, Weston Rutledge's business expenses, and investments unrelated to those sold to investors. Gish also used approximately $167,000 to buy a house. Millions more were transferred to third parties.

communicate with the lawyer, nor attempt to recover the unexpended retainer paid to him out of an account funded by investor monies.

In March and April of 2006, the SEC instituted its own investigation of Gish and his investment programs.  On May 17, 2006, the SEC obtained a court order shutting down Weston Rutledge and appointing a Receiver for the business and the approximately $1 million of investor funds remaining.

Gish and Ettenborough were indicted and convicted on various counts of mail and wire fraud.  Gish was sentenced to 240 months' incarceration. Ettenborough was sentenced to 84 months' confinement.

## II.

On appeal, Ettenborough argues that she was Gish's innocent dupe in this fraudulent investment activity.  There was more than sufficient evidence, however, from which the jury could have concluded that she was a knowing and active participant in the scheme.  The evidence was that Ettenborough knew both the source of the funds she disbursed – she wrote the checks and sent the wires disbursing investor monies – and that she knew that the funds were never deposited in a blocked account and that there were no earnings, as she represented to investors.  Multiple investors testified to direct, individual communications in which Ettenborough made knowing misrepresentations about their investments to them.  Whether Ettenborough was a knowing participant in Gish's investment

5

scheme is a preeminent jury question, and one which the jury was entitled to and did resolve against her.

The defendants also argue that the jury was improperly instructed on a theory of deliberate ignorance. We find no reversible error here, since the jury was also instructed and there was ample evidence to support a theory of their actual knowledge. *See United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) (harmless error to instruct jury as to deliberate ignorance if the jury was also instructed and the evidence was sufficient to support inference of actual knowledge).[3]

Next, defendants assert that the district court erred in permitting the testimony of three lawyers regarding their communications to Gish and Ettenborough that the investment scheme was fraudulent and in violation of federal and state securities law. We find no merit in this contention. Although expert testimony as to a defendant's state of mind at the time of the offense is barred by Federal Rule of Evidence 704(b), the record here is clear that the challenged testimony did not do so. The lawyers testified as to what they told Gish and Ettenborough about the legality of their scheme. They did not testify as to what Gish and Ettenborough thought about that advice, nor as to any other state of mind they might have had at the time. That conclusion was left for the jury to infer.

---

[3] Nor do any of the related arguments made in connection with the deliberate ignorance instruction change our conclusion.

Expert evidence that supports an inference as to the defendants' intent or other state of mind is not barred so long as it leaves that inference to the jury to draw. *See United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011).   That is what occurred here.

Finally, we find no reversible error in defendants' complaints that evidence regarding the Georgia investigation was improperly admitted under Federal Rule of Evidence 404(b).  On the contrary, this is precisely the sort of evidence of prior conduct – relevant to the ultimate issue of intent to defraud – that is admissible under the rule.  *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 486-87 (6th Cir. 1999).

As to Gish's allegation of sentencing error, we note that the sentence is a middle-of-the-range guideline sentence and that the district court specifically referred to and explained its consideration of the 18 U.S.C. § 3553(a) factors.  We find no reversible error in the district court's sentence.

## III.

For the foregoing reasons, the convictions and sentence imposed on Gish and Ettenborough by the district court are due to be

AFFIRMED.

7